# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

JOYCE BYEST                                                                                    **PLAINTIFF**

V.                                                                         **NO. 4:13-CV-0009-DMB-JMV**

**WAL-MART STORES, INC.**
**a/k/a Wal-Mart Store #0707**                                                        **DEFENDANT**


## MEMORANDUM OPINION AND ORDER
## <u>GRANTING MOTION FOR SUMMARY JUDGMENT</u>

This is an employment discrimination action brought by Plaintiff Joyce Byest against her former employer, Defendant Wal-Mart Stores, Inc. Plaintiff alleges that, while employed by Defendant, she was exposed to unlawful sexual harassment and was eventually dismissed in retaliation for having exercised rights protected by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq. Doc. #2. Plaintiff further brings a breach of contract claim based on her allegation that her termination violated one of Defendant's internal policies. *Id.* On October 7, 2013, Defendant filed a motion for summary judgment seeking dismissal of all claims. Doc. #23.

## I.
## <u>Initial Matters</u>

Prior to addressing the motion for summary judgment, it is beneficial to resolve four outstanding motions: (1) Defendant's motion for leave to file a supplement to Exhibit "J" to its motion for summary judgment, Doc. #43; (2) Defendant's motion for leave to file extrinsic evidence into the record, Doc. #45; (3) Plaintiff's motion for reconsideration, which Plaintiff incorporated into her response to Defendant's motion to file extrinsic evidence, *see* Doc. #47; and (4) Defendant's motion to strike, Doc. #49.

### A. Motion for Leave to File Supplement

On October 7, 2013, Defendant filed a motion for summary judgment, a memorandum in support, and twenty-five exhibits. Docs. #23, 24. One of Defendant's proffered exhibits, Exhibit J, was a DVD disc containing a video player software program and three playable video files.

On May 29, 2014, Defendant filed a motion for leave to supplement Exhibit "J." Doc. #43. In the accompanying memorandum, Defendant states that, following communication with court staff,[1] it learned that two of the playable video files on the Exhibit J disc were identical. Doc. #44. Defendant submits that the disc is missing a video file and thus seeks leave to submit a new disc. *Id.* As support for the relief sought, Defendant argues that acceptance of the new file would serve "the interests of justice and judicial economy" and that Plaintiff would not suffer prejudice because she had been served with the file previously. *Id.* Plaintiff has not opposed the motion within the time allowed.

Upon consideration of Plaintiff's non-opposition, and the judicial interest in obtaining a complete record, the Court will grant the motion for leave to supplement. Doc. #43. The Court deems the copy of Exhibit J submitted to the Court on May 21, 2014, by Defendant to supplement the record.[2]

### B. Motion for Leave to File Extrinsic Evidence

On May 23, 2014, the Court issued an order regarding objections Plaintiff made to certain exhibits presented by Defendant's motion for summary judgment. Doc. #42. In its order, the Court found that Plaintiff had raised a meritorious authenticity objection to a document purporting to be a June 2011 "Dismissal and Notice of Rights" issued by the Equal Employment

---

[1] The Court's staff provided notice to both parties of the identical files on Defendant's Exhibit J.

[2] In accordance with this ruling, Defendant is directed to electronically file a notice of conventional filing and send a hard copy of the exhibit to the Clerk's Office, as required by the Administrative Procedures for Electronic Case Filing.

Opportunity Commission to Plaintiff ("June Notice"). *Id*. However, commensurate with its obligations under Rule 56 of the Federal Rules of Civil Procedure, the Court allowed Defendant an opportunity to submit evidence to authenticate the document. *Id*.

On June 5, 2014, Defendant filed a motion for leave to file extrinsic evidence. Doc. #45. In its motion, Defendant seeks leave to submit an affidavit from Katherine W. Kores, the EEOC's District Director of the Memphis District Office, in which Kores attests that the relevant document is "a true and accurate copy [of the document] contained in the Commission's investigative file of [Plaintiff's previous charge]." Doc. #45-1. Defendant's motion also seeks a court finding that the June Notice is authentic. Doc. #46 at 2. Plaintiff objects to Defendant's motion on the ground that it does not "resolve questions surrounding … the date on said document." Doc. #47. More specifically, Plaintiff argues that "the date on said document is unclear, and Defendant's submission of said document doesn't clear up the date stamped on said document …." *Id*.

First, insofar as the Court previously granted Defendant leave to file authenticating evidence, the Court will grant leave to submit the Kores Affidavit for authentication purposes. The Kores Affidavit attached to Defendant's motion for leave is deemed filed for purposes of summary judgment. Next, the Court concludes that the Kores affidavit, which identifies the June Notice as coming from Plaintiff's EEOC file, is sufficient to authenticate the document. *See* Fed. R. Evid. 901 ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."); *see also U.S. v. Barlow*, 568 F.3d 215, 220 (5th Cir. 2009) ("Testimony by a witness with knowledge that the 'matter is what it is claimed to be' can be enough to prove

the thing's authenticity."). In so holding, the Court notes that, as explained more fully below, the specific day the notice was issued is irrelevant to the disposition of the case.

### C. Motion for Reconsideration

In her response to Defendant's Motion for Leave to File Extrinsic Evidence, Plaintiff submitted to the Court an April 10, 2014, order from the Circuit Court of Coahoma County ("State Court Opinion"). Doc. #47-1. In the State Court Opinion, a state court judge reversed a decision by the Mississippi Department of Employment Security ("MDES") Board of Review and held that Plaintiff was not terminated for cause. *Id*. Plaintiff presents the opinion in the context of requesting reconsideration of this Court's previous decision to overrule her hearsay objection to the admission of written statements taken during Defendant's disciplinary investigation preceding Plaintiff's termination. Doc. #47. In making this argument, Plaintiff notes, without elaboration, that "[t]he Circuit Court of Coahoma County specifically found that Plaintiff had not engaged in 'misconduct.'" *Id*.

Local Rule 7(b)(3) provides that "[a] response to a motion may not include a counter-motion in the same document." L.U. Civ. R. 7(b)(3)(C). Motions contained in responses may be denied without discussion. *See Akon v. Quitman Cnty. Sch. Dist.*, No. 4:08-cv-146, 2010 WL 780528, at *8 (N.D. Miss. Feb. 26, 2010) ("Plaintiff incorrectly filed her untimely Motion for Summary Judgment in the same document as her Response to Quitman County and Towner's Motion for Summary Judgment. Accordingly, the Court denies Plaintiff's Motion for Summary Judgment as … procedurally barred."). Accordingly, the undersigned denies Plaintiff's motion for reconsideration. Doc. #47.

### D. Motion to Strike

Defendant has moved to strike the State Court Opinion.  Doc. #49.  Because Plaintiff only introduced the State Court Opinion in support of its motion for reconsideration,[3] which this Court has already denied, Defendant's motion to strike will be denied as moot.

### II.
### Motion for Summary Judgment Standard

"Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law."  *Norwegian Bulk Transport A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 411 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 22–23 (1986)).  To award summary judgment, "[a] court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor."  *Id*. at 411–12 (internal quotation marks omitted).  To this end, "[t]he moving party bears the burden of establishing that there are no genuine issues of material fact."  *Id*. at 412.

"If, as here, the nonmoving party bears the burden of proof at trial, the moving party may demonstrate that it is entitled to summary judgment by submitting affidavits or other similar evidence negating the nonmoving party's claim, or by pointing out to the district court the

---

[3] Plaintiff has not sought leave to introduce the State Court Opinion into the evidentiary record and has not asked this Court to take judicial notice of the decision.  Accordingly, this Court will not consider the document in deciding the motion for summary judgment.  Even if the opinion were considered for the purposes of summary judgment, it would offer no relief to Plaintiff.  For the opinion to have any bearing on the case, the holding must be enforceable as between the parties.  However, Plaintiff has not claimed, much less offered argument for the proposition, that collateral estoppel or res judicata applies to the State Court Opinion.  Under these circumstances, application of res judicata or collateral estoppel would be inappropriate.  *See Cont'l Motors, Inc. v. Jewell Aircraft, Inc.*, 882 F.Supp.2d 1296, 1302 n.6 (S.D. Ala. 2012) ("[D]efendants also state in conclusory terms that the doctrines of collateral estoppel or *res judicata* somehow forbid Continental from bringing indemnity claims against them. Movants not having fleshed out this argument or lent it any substance, this Court will not undertake to develop it on their behalf.") (internal citation omitted) (collecting cases).

absence of evidence necessary to support the nonmoving party's case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If the moving party makes the necessary demonstration, "the burden shifts to the nonmoving party to show that summary judgment is inappropriate." *Id.* In making this showing, "the nonmoving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 191–92 (5th Cir. 2011) (internal punctuation omitted). When considering a motion for summary judgment, the Court "resolve[s] factual controversies in favor of the nonmoving party." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

### III.
### Relevant Facts

Plaintiff was hired by Defendant on November 27, 2004, to work for Wal-Mart Store #5196.[4] Doc. #23-2 at 56. In the summer of 2009, Plaintiff reached out to Brandon Garth, the manager of Wal-Mart Store #0707, located in Clarksdale, Mississippi, to request a transfer to Clarksdale. Doc. #23-2 at 80–83; Doc. #23-3 at ¶¶ 1, 3. Garth informed Plaintiff that no positions were available. Doc. #23-3 at ¶ 3.

Notwithstanding Garth's rebuttal, Plaintiff contacted other members of Store #0707's management, including then-Assistant Manager James Robinson. Doc. #23-2 at 87–88; Doc. #23-3 at ¶ 4. During the course of their discussions, according to Plaintiff, Robinson informed Plaintiff that he would find her a position in Clarksdale in exchange for her engaging him in sexual intercourse. Doc. #23-2 at 185–86.

---

[4] While Defendant's motion for summary judgment represents that the store is located in Memphis, Tennessee, no support for this fact is found in the accompanying citation.

In December 2009, following a December 11, 2011, e-mail complaint sent by Plaintiff detailing Robinson's offer, Garth began an investigation into Robinson's conduct. Doc. #23-3 at ¶¶ 4–5; Doc. #23-4. After speaking with Robinson, Garth concluded that he could not "substantiate" the complaint and that, therefore, any discipline would be inappropriate. Doc. #23-3 at ¶¶ 4–5.

In March 2010, Paige Hardy, Store #0707's Human Resources Manager, offered Plaintiff a Service Writer/Greeter position in the Tire and Lube Express department of the Clarksdale store. Doc. #23-2 at 89–90; Doc. # 23-3 at ¶ 5. Plaintiff accepted Hardy's offer. Doc. #23-2 at 89–90. "Shortly after" Plaintiff's transfer to Store #0707, Robinson voluntarily transferred out of Clarksdale. Doc. #23-3 at ¶ 5 n. 2.

On March 25, 2010, Plaintiff filed a Charge of Discrimination with the EEOC in which she alleged sex and retaliatory discrimination from November 23, 2009, through February 13, 2010. Doc. #23-6. Specifically, Plaintiff alleged "I requested a transfer to another store, but I was denied, because I would not submit to a sexual relationship with the Manager. I have been placed in a position where I have no prior training." *Id*.

Sometime in June 2011,[5] the EEOC issued Plaintiff a Notice of Suit Rights letter. Doc. #23-7. Although the Notice reflects Plaintiff's address, she testified that she never saw it. Doc. #23-2 at 188–89. Rather, Plaintiff believes that the document was sent to her attorney, who then failed to inform her of its receipt. *Id*.

---

[5] The date on the exhibit is partially obscured. Doc. #23-7. Defendant contends the defect was present in the document provided by the EEOC. Doc. #24 at 4 n.5.

Plaintiff testified that during her employment in Clarksdale, she was sexually harassed by five employees at the Clarksdale store: James Abner,[6] Charlie Upshaw, Ken Johnson, Marcus Thomas, and Martin Robinson.[7] Doc. #23-2 at 203, 251.

On May 26, 2012, Plaintiff was involved in a physical altercation with her fiancé, Fabian Hunter, on the floor of the Clarksdale store. Doc. #23-2 at 127–29. The evidence shows that, after dropping Plaintiff off at work, Hunter followed Plaintiff into the store and accosted her, taking a cellular phone off her person. *Id*. at 130–32. When Hunter moved to leave the store with the cellular phone, Plaintiff chased after him and attempted to retrieve the device. *Id*. During this second interaction, Plaintiff grabbed and pushed Hunter while Hunter attempted to extricate himself from Plaintiff's hold. Doc. #25. Eventually, Hunter returned the phone to Plaintiff. Doc. #23-2 at 140–43. Shortly after retrieving her phone, Plaintiff was approached by Assistant Manager Frank Ross, who suggested that Plaintiff return home and return to work later in the day. *Id* at 143. Plaintiff went home, combed her hair, and returned to work approximately twenty minutes later. *Id*. at 143–44.

During the course of the day, Garth conducted an investigation into the incident. Doc. #23-3 at ¶¶ 6–7. Specifically, Garth took written statements from Ross; Candice Rich, an Associate at the store; and a person named Marvin Buckhana whose relation to the incident is unclear. *Id*. According to Garth, "[t]he majority of these statements identified [Plaintiff] as the

---

[6] Although Plaintiff testified only to the name "James," evidence suggests the "James" referred to by Plaintiff is James Abner, a door greeter at the Clarksdale store. Doc. #23-3 at ¶ 11.

[7] Specifically, Plaintiff testified that: (1) Abner made inappropriate sexual comments to her; (2) Upshaw regularly hugged her and made sexually-charged comments; (3) Johnson made inappropriate comments, which included propositioning sex; (4) Thomas "constantly" made remarks to her about her lips and (5) Martin Robinson made motions with his tongue which Plaintiff took as references to oral sex. Doc. #23-2 at 103, 112, 205–06, 224, 233, 244.

aggressor."[8]  *Id*. at ¶ 6.  Additionally, Garth reviewed the store's security footage and observed that Plaintiff

> had multiple chances to disengage [from the altercation] and seek help from management.  Instead she threw a cup of what appeared to be coffee at him and charged towards him.  [Plaintiff] left the liquid on the floor, thereby creating a potential slip and fall hazard for both customers and associates.

Doc. #23-3 at ¶ 7.

When Plaintiff returned to the store following the altercation, Garth asked that she provide a written statement regarding the incident.  Doc. #23-3 at ¶ 8.  Garth also suspended Plaintiff pending his investigation.  *Id*.  Following analysis of the available evidence and Wal-Mart's Violence-Free Workplace Policy,[9] Garth elected to terminate Plaintiff.  *Id*. at ¶ 9.  This decision was reviewed and confirmed by the overseeing Market Human Resources Director, Paige Hardy, and was communicated to Plaintiff on June 2, 2012.  *Id*. at ¶¶ 8–9.

At the time Plaintiff was terminated, employees at Defendant's Mississippi stores were subject to a "general" Attendance Punctuality Policy which provided for "authorized absences" to cover:  (1) "Bereavement," (2) "Community Emergency/Volunteer Time," (3) "Jury Duty," (4) "Leave of Absence," (5) "Natural Disasters," (6) "Participation in Legal Proceedings," (7) "Reasonable Accommodation," (8) "Voting Time," (9) "Extraordinary Circumstances Approved by MRRM," and (10) "Workers Compensation."  Doc. #23-1 at ¶ 9; Doc. #23-24.  At the same time, Defendant's stores in Illinois employed a state-specific "Violence Victim Recovery Time Policy" which provided time off to employee-victims of "domestic violence, sexual assault, stalking or cyber stalking …."  Doc. #23-23.  Although the Violence Victim Recovery Time

---

[8] The Court notes that Garth's characterization is a creative way of admitting that two people characterized Plaintiff as the aggressor, while one person did not.

[9] The Violence-Free Workplace policy prohibits "any form of violence or threat of violence in or affecting the workplace, other associates or our customers/members."  Doc. #23-12.  Violation of the policy carries penalties "up to and including termination."  *Id*.

Policy did not cover Defendant's Mississippi employees,[10] Doc. #23-1 at ¶ 9; Doc. #23-24,

Plaintiff was able to access the document on Defendant's internal computer system.  Doc. #23-2

at 270–71.

On June 19, 2012, Plaintiff completed an EEOC Intake Questionnaire.  Doc. #23-17.

Plaintiff's questionnaire, which alleged retaliatory termination and discriminatory termination

arising from the May 26 incident, included a six page hand-written attachment in which Plaintiff

accused Garth of engaging in "male chauvinism in his management techniques."  *Id*.

On July 26, 2012, Plaintiff filed a second formal charge of discrimination with the

EEOC.  Doc. #23-14.  Plaintiff's July 26 charge alleged that she was "discriminated against, and

discharged in retaliation for filing previous charges of discrimination … and my sex … in

violation of Title VII …."  *Id*.  The charge listed May 26, 2012, as both the earliest and latest

dates of discrimination.  *Id*.  A Notice of Suit Rights letter was issued on Plaintiff's second

charge on September 26, 2012.  Doc. #2 at Ex. B.

On December 26, 2012, Plaintiff filed this employment discrimination action in the

Circuit Court of Coahoma County.  Doc. #1.  Plaintiff's complaint asserted three actions: (1) a

claim for sexual harassment; (2) a claim for retaliatory discharge; and (3) a claim for violation of

Wal-Mart's "Violence Victim Recovery Time" policy.  Doc. #2.  The action was removed to this

Court on January 23, 2013.  Doc. #1.

### III.
### Analysis

In its motion for summary judgment, Defendant argues that: (1) Plaintiff's sexual

harassment claim fails because it is untimely and unsupported by evidence; (2) Plaintiff's claim

based on violation of the Violence Victim Recovery Time Policy fails because the policy is

---

[10] The heading on each page of the document reads "Time Off Policy – Illinois."  Doc. #23-23.  Additionally, Hardy submitted an affidavit declaring that the Illinois policy did not apply to Mississippi employees.  Doc. #23-1 at ¶ 9.

inapplicable to Defendant's Mississippi employees; and (3) Plaintiff's retaliatory discharge claim fails because she cannot show a connection between her discharge and protected activity under Title VII. Doc. #24.

### A. Sexual Harassment Claim

Plaintiff's complaint alleges that she was subjected to sexual harassment by Robinson and that she was "placed in an unfamiliar position, inadequately trained for said position [and] forced to take a salary cut … due to [her] resistance to James' unwarranted, repeated and unsolicited sexual advances." Doc. #2. When asked about sexual harassment at her deposition, Plaintiff testified that, in addition to James Robinson's alleged harassment, she was harassed by Charlie Upshaw, Ken Johnson, Marcus Thomas, James Abner, and Martin Robinson. Doc. #23-2 at 112, 203.

In its motion, Defendant argues that Plaintiff failed to exhaust her administrative remedies with regard to her sexual harassment claim, and that even if she exhausted her remedies, summary judgment is appropriate because the only harassment she reported to Defendant did not amount to actionable sexual harassment. Doc. #24 at 14–16. Plaintiff's response completely fails to address Defendant's arguments regarding the viability of her sexual harassment claim, much less point to specific evidence which would create a genuine issue of material fact as to whether she was subjected to unlawful harassment.[11]  *See* Doc. #30. Accordingly, Plaintiff is deemed to have waived this claim. *See Aldrup v. Caldera*, 274 F.3d 282, 288 (5th Cir. 2001) ("[The plaintiff's] claim ... was waived because it was not raised in his

---

[11] In her response to the motion for summary judgment, Plaintiff cited her June 2012 letter to the EEOC and argued that Defendant "was aware of said charges initially filed and said supplemental charges." Doc. #30 at 3. Even if this could be deemed a response to Defendant's exhaustion argument, Plaintiff still failed to respond to Defendant's contentions regarding the merits of her sexual harassment claim, and thus failed to raise a genuine issue of material fact as to the viability of the claim. Under these circumstances, summary judgment on the sexual harassment claim is appropriate. *See Gilley v. Protective Life Ins. Co.*, 17 F.3d 775, 781 n.13 (5th Cir. 1994) ("We have held that an <u>argument</u> is waived if the party fails to make the <u>argument</u> in response to summary judgment.") (emphases added).

response to defendant's motion for summary judgment."); *see also Sangi v. Fairbanks Capital Corp.*, 219 Fed. App'x 359, 361–62 (5th Cir. 2007) (affirming grant of summary judgment where district court "acknowledged that the motion was unopposed [and] granted summary judgment on the basis that the [plaintiffs] had not established a fact issue on an essential element of their case").

### B. "Violence Victim Recovery Time" Claim

Plaintiff's complaint alleges that:

> In wrongfully terminating and actively engaging in retaliation against Plaintiff, Defendant violated its stated policy of allowing "time off if you or your family members are victims, of domestic violence, sexual assault, stalking, cyber stalking, to ensure that you have sufficient time to obtain help for yourself and/or your family members as fully described below." Clearly Plaintiff's unsolicited attacked [sic] by her boyfriend qualified under said policy. However, Defendant ignored said policy and terminated Plaintiff[.]

Doc. #2 at 4. The foregoing represents the entirety of Plaintiff's claim. Although it is unclear, it appears that Plaintiff's claim is based on an allegation that: (1) Defendant maintained a policy under which victims of domestic violence are entitled to time off; and (2) Defendant violated this policy by terminating Plaintiff.

"Mississippi is an employment-at-will state to the extent that … one who is under a contract of employment for an indefinite term may quit or may be terminated at the will of the employer …." *DeCarlo v. Bonus Stores, Inc.*, 989 So.2d 351, 354 (Miss. 2008). However, Mississippi law recognizes three exceptions to the at-will rule: (1) "an employee who refuses to participate in an illegal act … shall not be barred … from bringing an action in tort for damages against his employer," *McArn v. Allied Bruce-Terminiz Co., Inc.*, 626 So.2d 603, 607 (Miss. 1993); (2) "an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred … form bringing action in tort for damages against his

employer," *id.*; and (3) where an employer's conduct serves to modify the employment contract in such a way as to abrogate the at-will rule, *Bobbitt v. Orchard, Ltd.*, 603 So.2d 356, 361 (Miss. 1992).

Citing to *Bobbitt*, Plaintiff argues that "if an employer … holds out or represents to its employees that [it] will follow certain written guidelines in warning, suspending, or terminating employees, then the Courts must determine whether said employer followed said written guidelines in warning, suspending or terminating said employee[]." Doc. #30 at 4. More specifically, Plaintiff argues "that Defendant failed to follow its own policy, and violated said policy on Violence Victim Recovery Time by terminating Plaintiff when in fact Plaintiff did not initiate [the] confrontation with her fiancé, nor did she intend to engage in said conduct." *Id.* at 4–5.[12]

"In *Bobbitt,* [the] Court held that where an employer published and distributed a handbook to all employees, the employer … created a <u>contractual obligation</u> to follow the policies and procedures outlined in the handbook …." *Slatery v. Ne. Mississippi Contract Procurement, Inc.*, 747 So.2d 257, 259 (Miss. 1999) (emphasis added). It is axiomatic that "[t]he most basic elements of an enforceable contract are an offer and an acceptance." *McGhee v. Young*, 138 So.3d 259, 262 (Miss. 2014). Accordingly, it follows that, for an employer's conduct to be deemed to alter the at-will rule, such conduct must amount to an offer to create

---

[12] Additionally, in her response to the motion for summary judgment, Plaintiff appears to raise, for the first time, an argument that Defendant violated its "Coaching for Improvement" policy, which sets forth six levels of escalating discipline. Doc. #30 at 5. To the extent this argument attempts to assert a new theory of liability, such claim must be rejected. *Cutrera v. Bd. of Supervisors of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."). Even if the claim were properly before the Court, it would fail insofar as the Coaching for Improvement policy contains an express provision that "This information does not create an express or implied contract or any other contractual commitment …. Employment with Walmart is on an at-will basis." Doc. #23-13; *McCroy v. Wal Mart Stores, Inc.*, 755 So.2d 1141, 1145 (Miss. Ct. App. 1999) ("disclaimers in employees' manuals having their purpose of preserving the employment at will relationship cannot be ignored").

such a modification, and must be supported by consideration. *See Glasgow v. Sherwin-Williams Co.*, 901 F.Supp. 1185, 1191 (N.D. Miss. 1995) ("The only way that [a letter] could alter that employment relationship … is if it were supported by a valuable consideration outside the services which [Glasgow] renders from day to day.") (internal punctuation omitted).

"For an offer to be valid under Mississippi law, it must be clear, definite, and complete." *Morris v. Liberty Mut. Ins. Co.*, 659 F.Supp. 201, 204 (N.D. Miss. 1987) (citing *Williams v. Favret*, 161 F.2d 822, 824 (5th Cir. 1947)). "The manifested intention of the offeror determines the person or persons in whom is created a power of acceptance." Restatement (Second) of Contracts § 29 (1981).

Here, the relevant policy was posted on Defendant's internal computer system under the heading "Time Off Policy – Illinois." Doc. #23-23. The document explicitly states "[t]his policy applies only to associates who work … in Illinois." *Id.* Even if the text of the policy could be considered an offer to alter the at-will, it is clear that such an offer was limited to employees within the state of Illinois. Because the Violence Victim Recovery Time Policy was never offered to Plaintiff, she could not accept its terms. Restatement (Second) of Contracts § 29 (1981). Accordingly, no contract was formed and Plaintiff's claim for breach of the policy must fail. *See Slatery*, 747 So.2d at 259 (company's unapproved handbook could not create a contract).

## C. Retaliation

"Assuming a plaintiff has exhausted his administrative remedies, he may prove a claim of … retaliation either by direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Where, as here, a plaintiff lacks direct evidence[13] of unlawful

---

[13] "The Fifth Circuit has defined direct evidence as evidence which, if believed, proves the fact of intentional retaliation without inference or presumption." *Martin v. J.A.M. Dist. Co.*, 674 F.Supp.2d 822, 845 (E.D. Tex. 2009)

retaliation, the Court applies "[t]he well-known *McDonnell Douglas* framework." *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001). Under *McDonnell Douglas*, a plaintiff first must establish a prime facie case by showing that: "(1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse action." *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008).

"If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate…non-retaliatory reason for its employment action. If the employer meets this burden of production, the plaintiff then bears the burden of proving that the employer's reason is a pretext for the actual retaliatory reason." *Id.* (internal citations omitted). The Supreme Court recently clarified that "Title VII retaliation claims must be proved according to traditional principles of but-for causation…. This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, __ U.S. __, 133 S.Ct. 2517, 2533 (2013).

Even if Plaintiff could establish a prima facie case, she has failed to create a genuine issue of material fact as to whether the stated reason for her termination – a violation of Defendant's Violence-Free Workplace Policy – was pretext for unlawful discrimination. In this regard, Plaintiff contends that her pretext burden has been met by "Defendant's failure to follow its discipline policy [and] Plaintiff's exemplary work ethic[,]" more specifically by the existence of ten allegedly "undisputed" facts she describes as:

> (1) Plaintiff during her almost eight (8) years with Wal-Mart never had a single coaching infraction; (2) Plaintiff during her almost eight (8) years with Defendant never had a single disciplinary write-up; (3) Plaintiff on the day in question had not clocked-in prior to the incident; (4) Defendant's video clearly

---

(quoting *Fierros v. Texas Dep't of Health*, 274 F.3d 187, 195 (5th Cir. 2001)) (internal punctuation omitted). No such evidence exists in the record.

shows that Plaintiff entered Wal-Mart without her "boyfriend"; (5) Plaintiff
was a model worker; (6) Plaintiff was accosted by her "boyfriend"; (7)
Plaintiff attempted to retrieve[] Plaintiff's cellphone and money contained
within her cellphone bag; (8) Plaintiff in attempting to retrieve Plaintiff's
personal property from Plaintiff "boyfriend" never struck, hit, or punch him;
(9) Plaintiff never endangered the safety of Defendant's patrons or fellow
employees; (10) Plaintiff's action never cause[d] the destruction of Plaintiff's
personal property[ or] Plaintiff's "boyfriend's" personal property or the real
property or merchandise belonging to Defendant.

Doc. #30 at 7–8. Although largely devoid of argument, it appears the first three facts are offered

as support for Plaintiff's alleged "exemplary work ethic," while the remaining facts are tied to

her contention that her termination violated company policy.

First, because Defendant has argued that Plaintiff's termination was caused by her

violation of a specific policy, not her previous work history or job performance, Plaintiff's

(largely unsubstantiated) claim that she was a model employee plays no role in the pretext

analysis. *See Mease v. Wilmington Trust Co.*, 726 F.Supp.2d 429, 439 (D. Del. 2010) ("WTC's

proffered reason for terminating Mease was the specific instance of the improper Camden

transfer, not any long-term performance issues. As such, any discussion about Mease's

performance reviews does not cast any real doubt on WTC's proffered legitimate reason.").

Furthermore, to the extent that the specific violence policy provided for immediate termination,

Plaintiff's contention that Defendant did not follow its general disciplinary procedure of

progressive discipline is without merit. *See Singleton v. Select Specialty Hosp.-Lexington, Inc.*,

391 Fed. App'x 395, 404 (6th Cir. 2010) (failure to comply with progressive discipline policy is

only evidence of pretext where employee is terminated pursuant to such policy).

Finally, it appears that Plaintiff argues that her termination pursuant to the violence

policy was pretext insofar as she was not the initial aggressor. When considering pretext, "[t]he

question is not whether an employer made an erroneous decision; it is whether the decision was

made with discriminatory motive." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995). Under *Mayberry*, Fifth Circuit courts have held that, standing alone, a genuine issue of material fact that a plaintiff acted in self-defense does not create a genuine issue of material fact as to whether a termination pursuant to an anti-violence policy was pretext for unlawful discrimination. *See Gibson v. Applebee's Neighborhood Grill*, No. 07-0719, 2008 WL 4224815, at *3 (W.D. La. Sep. 10, 2008) (granting summary judgment for employer where "the available evidence shows that [defendant] terminates employees who engage physically with another employee in a race-neutral manner, regardless of who instigates a dispute"); *Flournoy v. Campbell Concrete & Materials, LLC*, No. H-09-3894, 2011 WL 722614, at *6 (S.D. Tex. Feb. 22, 2011) (granting summary judgment for employer despite genuine issue of material fact as to self-defense).

It is undisputed that the relevant Violence-Free Workplace Policy allows for termination of an employee who engages in "<u>any form of violence</u> or threat of violence in or affecting the workplace, other associates or our customers/members." Doc. #23-12 (emphasis added). Of relevance here, the policy defines violence as including "conduct … which … restrains … another person." *Id*. It is undisputed that, after having her cell-phone forcibly removed from her person, Plaintiff initiated contact with her fiancé in an attempt to retrieve her property and that, in doing so, she restrained his person. More specifically, Plaintiff jumped on her fiancé's back and grasped his clothing as he tried to get away. Thus, while it is clear that Plaintiff was not the initial aggressor, it is equally clear that, insofar as Plaintiff engaged in "violence," Defendant's policy allowed for her termination. Under these circumstances, the Court is compelled to conclude that Plaintiff has failed to show a genuine issue of material fact as to

pretext and that, therefore, summary judgment must be granted against her retaliation claim. *See* *Gibson*, 2008 WL 4224815, at *3.

## IV.
## Conclusion

For the reasons set forth above, the Court concludes that: (1) Plaintiff has waived her sexual harassment claim; (2) Plaintiff's breach of contract claim fails for the lack of an enforceable contract; and (3) Plaintiff's retaliatory discharge claim fails because she cannot show that Defendant's stated-reason for termination is pretext for unlawful discrimination. Accordingly, Defendant's motion for summary judgment is **GRANTED**.

SO ORDERED, this the 7th day of August, 2014.

**/s/ Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**